IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOSE HERNANDEZ, individually and on behalf of others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. CV-F-06-1383 OWW/DLB |
| | | ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS (Doc. 17) AND DENYING PLAINTIFF'S MOTION FOR SANCTIONS (Doc. 25) |
| Plaintiff, | | |
| vs. | | |
| LEO BALAKIAN, ANTHONY BALAKIAN, and VINCE BALAKIAN, | | |
| Defendant. | | |

Plaintiff Jose Hernandez has filed a class action Complaint against defendants Leo Balakian, Anthony Balakian, and Vince Balakian, owners of Fruit Patch, Inc.  The Complaint alleges that "Leo Balakian and his sons, Anthony and Vince Balakian ... have conspired to operate Fruit Patch Inc. and other agricultural growing businesses they own or operate (hereinafter 'the other entities') through a pattern of racketeering activity, the

1

Illegal Immigrant Hiring Scheme."   ¶ 4   The Complaint is brought on behalf of all legal hourly-paid workers who have been employed by an entity owned or operated by the Defendants.   Plaintiff alleges that Defendants "have depressed his wages as an agricultural worker at Fruit Patch, Inc. by knowingly employing vast numbers of illegal immigrants there for the express purpose of depressing the market price for unskilled labor."   Plaintiff refers to this as "the Illegal Immigrant Hiring Scheme" or "the Scheme".   The Complaint alleges:

> 2.   The Illegal Immigrant Hiring Scheme violates the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*   It is perpetrated every day, as an integral part of the Balakian's regular manner of staffing their orchards, and will continue unabated, victimizing every legal worker, until halted by judicial intervention.

The Complaint further alleges:

> 14.   The Illegal Immigrant Hiring Scheme saves Fruit Patch Inc. and the other entities millions of dollars per year in labor costs. This is so because  illegal immigrants will work for starvation wages and in deplorable working conditions, a form of modern-day indentured servitude.   Such hiring practices are in direct violation of the Immigration and Nationality Act and RICO, which makes the employment of illegal immigrants a predicate offense.   Thus, if the Balakians were not hiring large numbers of illegal immigrants, their businesses would have to pay the Plaintiff Class significantly higher wages, and their profits would be sharply reduced.
>
> 15.   All three of the Balakians have approved the following hiring criteria for Fruit Patch Inc. and the other entities.   These criteria subvert the law against hiring illegal immigrants and effectively turn a blind eye

2

to factors which any reasonable employer would know indicate job applicants are unauthorized for employment in the U.S.:  1) hiring workers who cannot speak English while claiming to be U.S. Citizens or Lawful Permanent Residents; 2) hiring workers who do not have housing and are recent arrivals to the U.S. and claim to be U.S Citizens or Lawful Permanent Residents; 3) hiring workers who present authorization documents which are invalid on their face because the pictures are of a different person, are upside down, are on poor quality paper, etc.; 4) hiring workers who are personally known to them and their co-conspirators to be in the U.S. illegally and are using false documents; and 5) hiring workers who have previously been employed under different identities.  A majority of the hourly workforce of Fruit Patch Inc. and the other entities fall into one of more of these categories.

16.  Additionally, Fruit Patch Inc. and the other entities are often informed that large numbers of their workers are using false social security numbers by the Social Security Administration.  Most of these workers then simply assume new identities and continue to be employed, pursuant to policies set by the Balakians.

...

17.  The Balakians have personally approved the hiring procedures detailed above.  They have also directed their hiring personnel, including Robero Olivarez, who has hired hundreds of illegal immigrants for Fruit Patch Inc. to follow these procedures, *i.e.,* in ways that ensure the employment of a largely illegal workforce.

18.  In addition, the Balakians facilitate the hiring of many of these illegal immigrants by directing their hiring-personnel [sic] to obtain housing for them, which Roberto Olivarez, among others, has done for illegal workers at Fruit Patch Inc.

19.  Therefore, Mr. Hernandez alleges that the Balakians and their co-conspirators have

3

> facilitated the Illegal Immigrant Hiring
> Scheme, thereby causing Fruit Patch Inc. and
> the other entities they operate to hire more
> than 100 illegal workers per year during the
> last four years.

The Complaint alleges that the Balakian's Illegal Immigrant Hiring Scheme violates the Immigration and Nationality Act, 8 U.S.C. § 1324(a)(1)(B)(3)(A),[1] as they have conspired "to employ more than 10 undocumented, illegal aliens in each of the last four years, *knowing* each was smuggled into the country and/or harbored once they arrived here."  ¶ 21. [Emphasis added]  The Complaint alleges that "by *knowingly* employing illegal immigrants and ... conspiring to provide them with housing, the Balakians have  conspired to violate 8 U.S.C. § 1324(a)(1)(A)(iii), which makes it a federal crime for anyone who 'knowing, or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation.'" ¶ 22. [Emphasis added].

The Complaint alleges that "[t]hese are provisions of § 274 of the Immigration and Nationality Act, which is a RICO predicate offense" pursuant to 18 U.S.C. § 1961(1)(F); that Fruit Patch Inc. is a corporation affecting interstate commerce and is

---

[1]Defendants assert that no such provision exists and that Plaintiff intended to allege violations of 8 U.S.C. § 1324(a)(3)(A).

4

therefore a RICO enterprise pursuant to 18 U.S.C. § 1961(4); that the other entities are each RICO enterprises affecting interstate commerce; and that all three of the Balakians operate and manage each of these enterprises and have implemented the Illegal Immigrant Hiring Scheme at each by virtue of their roles as managers, officers and owners.  The Complaint alleges:

> 25.  The conspiracy to perpetrate the Scheme is a violation of 18 U.S.C. § 1962(d), an agreement among the Balakians and co-conspirators to violate § 1962(c), by participating in the affairs of Fruit Patch Inc. and the other entities through a pattern of racketeering activity.  The Scheme is on-going, open-ended, and has been perpetrated continuously for the last four years.  It will not stop without judicial intervention.
>
> ...
>
> 26.  The Balakians' Illegal Immigrant Hiring Scheme, by itself, was a substantial factor in causing the depressed wages about which Hernandez and the Class complain.  No other party has been damaged by the Scheme.
>
> 27.  Each defendant is subject to joint and several liability for all of the damage caused by all the racketeering acts committed by any of the conspirators.

Defendants move to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Rules 8 and 12(b)(6), Federal Rules of Civil Procedure.

In addition to opposing the Motion to Dismiss, Plaintiff has filed a Motion for Sanctions pursuant to Rule 11, Federal Rules of Civil Procedure, against Defendants and their counsel, Monte B. Lake, because of the failure to cite *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir.2002), in the Motion to Dismiss.  The

Motion for Sanctions seeks an order striking Defendants' Motion to Dismiss and an award of attorneys' fees incurred by Plaintiff in opposing the Motion to Dismiss and for preparing the Motion for Sanctions.

**A.  Defendants' Motion to Dismiss.**

In moving to dismiss, Defendants contend that the Complaint fails to adequately plead the necessary elements of a RICO predicate Act under 18 U.S.C. § 1962(c) and underlying crimes defined by the Immigration and Nationality Act; that Plaintiff's failure to state a Section 1962(c) claim results in the failure to state a claim under Section 1962(d); and that Plaintiff fails to adequately plead the necessary elements of a RICO conspiracy under Section 1962(d).

**1.  Governing Standards.**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Novarro v. Black*, 250 F.3d 729, 732 (9th Cir.2001). Dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984). In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of

all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002).  However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003).  When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice.  *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-706 (9th Cir.1988).

### 2. __Failure to Plead Racketeering Activity__.

"A civil RICO complaint must at least allege: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to plaintiff's "business or property."'" *Flores v. Emerich & Fike*, 416 F.Supp.2d 885, 911 (E.D.Cal.2006).  Defendants do not challenge the sufficiency of the Complaint as to the conduct, enterprise, pattern, or causation and injury elements of a RICO charge.

RICO prohibits engaging in a pattern of "racketeering activity," defined in 18 U.S.C. § 1961(1) as violating certain laws.  Included as racketeering activity is "any Act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in or harboring certain aliens) ...."  18

7

1  U.S.C. § 1961(1)(F).  A "pattern of racketeering activity" is

2  defined in 18 U.S.C. § 1961(5) as "at least two acts of

3  racketeering activity" within a ten year period.

4               **a.   8 U.S.C. § 1324(a)(3)**.

5      Defendants argue that the Plaintiff has not and cannot plead

6  a pattern of racketeering activity because Plaintiff fails to

7  plead sufficient facts to allege a violation of Section 274 of

8  the Immigration and Nationality Act.

9      8 U.S.C. § 1324(a)(3) provides in pertinent part:

10         (A) Any person who, during any 12-month
period, knowingly hires for employment at

11         least 10 individuals with actual knowledge
that the individuals are aliens described in

12         subparagraph (B) shall be fined under Title
18 or imprisoned for not more than five

13         years, or both.

14         (B) An alien described in this subparagraph
is an alien who -

15

16           (i) is an unauthorized alien (as
defined in section 1324a(h)(3) of this

17         title), and

18           (ii) has been brought into the
United States in violation of this title.

19 8 U.S.C. § 1324a(h)(3) defines an "unauthorized alien" by stating

20 that the term means "with respect to the employment of an alien

21 at a particular time, that the alien is not at that time either

22 (A) an alien lawfully admitted for permanent residence, or (B)

23 authorized to be so employed by this chapter or by the Attorney

24 General."

25     Defendants argue that the Complaint's allegations that

26 Defendants violated this provision are "wholly conclusory".

Defendants contend that the Complaint merely uses the terms "knowingly" and "knowing", which allegations do not satisfy the "actual knowledge" requirement of Section 1324(a)(3)(A).  Because the Complaint does not allege that Defendants brought illegal aliens into the United States with actual knowledge that they were illegal aliens to employ them, Defendants further argue that the Complaint fails to allege facts satisfying Section 1324(a)(3)(B).

Defendants rely on *System Management, Inc. v. Loiselle*, 91 F.Supp.2d 401 (D.Mass.2000), *rev'd on other grounds*, 303 F.3d 100 (1st Cir.2002).  In *Loiselle,* the Complaint alleged the repeated and knowing hiring of at least ten unauthorized aliens per year since such hiring activity became racketeering activity.  In dismissing the claim, the district court held in pertinent part:

> The statute also requires the defendant, however, to have actual knowledge that the aliens have 'been brought into the country in violation of [§ 1324(a)(3)].'  8 U.S.C. § 1324(a)(3)(B)(ii).  This clause is self-referential and thus difficult to interpret, but in this case it seems to require, in order for liability to attach, that the aliens have been brought into the country by an employer for the purpose of illegal employment.  Thus, to state a civil RICO claim on the basis of a violation of this subsection of Title 8, the Plaintiffs must allege that Loiselle had knowledge of how the aliens had been brought into the United States and that they were *brought* into the United States in violation of this employment provision.  Although the Plaintiffs have alleged that Loiselle had knowledge of the aliens' illegal status, they have not set forth any factual allegation as to how the aliens entered the country or whether Loiselle had any knowledge of the purpose for

which they entered.  The text of 8 U.S.C. §
1324(a)(3) therefore compels the conclusion
that the RICO claim brought on the ground of
employment of aliens must be dismissed.

This conclusion is supported by other
indicia.  Section 1324 (Section 274 of the
Immigration and Nationality Act) bears the
title 'Bringing in and harboring certain
aliens.'  It thus seems targeted against
individuals who smuggle, conceal, or
transport illegal aliens into the United
States.  In contrast, Section 274A of the
Immigration and Nationality Act, which is
distinct from 274, is entitled 'Unlawful
employment of aliens' and contains a variety
of prohibitions on employment of illegal
aliens in the United States.  *See* 8 U.S.C. §
1324a.  Indeed, Section 274A, codified as 8
U.S.C. § 1324a, provides that it is unlawful
for a person or other entity 'to hire, or to
recruit or refer for a fee, for employment in
the United States an alien knowing the alien
is an unauthorized alien ... with respect to
such employment.'  8 U.S.C. § 1324a(a)(1)(A).
This is the appropriate statute to capture
Loiselle's alleged conduct, but the
Plaintiffs are unable to use it because a
violation of § 1324a is not listed as a
predicate Act of 'racketeering activity'
under RICO.  *See* 18 U.S.C. § 1961(1)(F).  The
original Complaint ... appears to use Section
274A as a predicate Act for the RICO claim.
The Plaintiffs perhaps realized their
inability to use Section 274A as a predicate
Act when they filed the Amended Complaint,
and changed their count to one under Section
274, trying improperly to fit the alleged
employment activity into a statute related to
bringing in and harboring aliens.  The RICO
claim premised on racketeering activity
defined at 18 U.S.C. § 1961(1)(F) must
therefore be dismissed.

91 F.Supp.2d at 408-409.

     Defendants argue that the Complaint fails to allege that

Defendants had actual knowledge of whether the aliens were

"brought" into the United States, fails to allege any facts

10

evidencing that Defendants had actual knowledge of the purpose for which the aliens entered the United States, and fails to allege any facts as to the individual Defendants' violations of Section 1324(a)(3).  Defendants assert that the "scant facts alleged in the Complaint all relate to hiring:

> Assuming, *arguendo*, that the allegations regarding the hiring of undocumented workers are true and plead with sufficient factual specificity, the Complaint fails to allege sufficient facts to satisfy the requirements of Section 1324(a)(3)(B).

Plaintiff responds that Defendants' reliance on *Loiselle* is misplaced, referring to the allegations in Paragraph 21 that Defendants knew that each alien "was smuggled into the country and/or harbored once they arrived here."  Plaintiff argues that the requirement that a Complaint allege that defendants brought the aliens into the United States finds no support from any court.  Plaintiff cites *Williams v. Mohawk Industries, Inc.*, 314 F.Supp.2d 1333, 1345-1346 (N.D.Ga.2004), *aff'd in relevant part*, 411 F.3d 1252 (11th Cir.2005).  In *Williams*, the defendant, relying on *Loiselle*, argued that the Complaint must allege that defendant itself brought the illegal aliens into the United States.  In rejecting this argument, *Williams* concluded:

> ... *Loiselle* holds that simple allegations that the defendant knowingly hired undocumented aliens are insufficient to state a claim under § 1324(a)(3); rather, a plaintiff must additionally allege that the defendant knew that the aliens were brought into the United States for the purpose of illegal employment.  *Loiselle*, however, did not hold that the employer *itself* must have brought the aliens into the United States for

11

1          a claim to arise under § 1324(a)(3).
           Accordingly, the Court concludes that for a
2          plaintiff to plead a violation of §
           1324(a)(3) adequately, the plaintiff must
3          simply allege that the aliens were *brought*
           into the United States in violation of
4          subsection (a), but there is no requirement
           that the employer must have brought the
5          aliens into this country.

6      Plaintiff further argues that the Complaint adequately

7   pleads that Defendants violated Section 1324(a)(3) and that

8   Defendants' assertion that the allegations are "conclusory" are

9   unsupported by any authority.  Plaintiff relies on *Mendoza v.*

10  *Zirkle Fruit Co., supra*, 301 F.3d 1163.

11     At issue in *Mendoza* was the standing of legally documented

12  workers to sue their employers under RICO, whom they alleged

13  depressed their salaries by conspiring to hire undocumented

14  workers and the constitutionality of supplemental subject matter

15  jurisdiction involving a party over whom there is no independent

16  basis for federal court jurisdiction.  301 F.3d at 1166.

17  However, before discussing the substantive merits of these

18  issues, the Ninth Circuit, noting that the district court

19  dismissed the action on the pleadings on the basis of RICO

20  standing and supplemental jurisdiction, addressed "one proffered

21  alternative ground for affirming the dismissal for failure to

22  state a claim":

23          ... In the RICO context, '[a]t the pleading
            stage, general factual allegations of injury
24          resulting from the defendant's conduct may
            suffice, for on a motion to dismiss we
25          presume that general allegations embrace
            those specific facts that are necessary to
26          support a claim.'  *NOW v. Scheidler*, 510 U.S.

                                12

1                          249, 256 ... (1994)(quoting *Lujan v.*

                          *Defenders of Wildlife*, 504 U.S. 555, 561 ...

2                          (1992)).

3                          ... The district court held that the 'Illegal

                          Immigrant Hiring Scheme' as pleaded involved

4                          a predicate RICO Act, knowingly hiring

                          undocumented workers in violation of

5                          Immigration and Naturalization Act § 274, 8

                          U.S.C. § 1324.  We are unpersuaded by the

6                          growers' argument that the district erred in

                          this respect.  Their argument rests on a

7                          hypertechnical reading of the complaint

                          inconsistent with the general notice pleading

8                          requirement.  *See Swierkiewicz*, 122 S.Ct. at

                          999.  The complaint alleges that the

9                          defendants had knowledge of illegal harboring

                          'and/or' smuggling.  Even if knowledge of

10                        smuggling were required by the statute, an

                        issue about which we express no opinion, the

11                        complaint easily contains this allegation.

                        We affirm the district court's analysis and

12                        reasoning on this issue ....

13  301 F.3d at 1168.

14     Although the above-quoted language in *Mendoza* is dicta, it

15  does suggest that the Ninth Circuit will not require the specific

16  pleading mandated by *Loiselle* with regard to pleading the

17  predicate act set forth in Section 1324(a)(3).  Combining

18  *Mendoza's* dicta with the requirements of notice pleading,

19  Defendants' motion to dismiss on this ground is DENIED.

20     Defendants further argue that the allegations in the

21  Complaint described in Paragraph 15 do not constitute violations

22  of Section 1324(a)(3).  Defendants contend that these facts, if

23  established, at best state violations under the amendments to the

24  Immigration and Nationality Act by the Immigration Reform and

25  Control Act of 1986, 8 U.S.C. § 1324a, which violations are not

26  listed as "racketeering activity" for purposes of RICO.

13

1  8 U.S.C. § 1324a makes employment or continued employment of
2  unauthorized aliens unlawful.

3  However, *United States v. Zheng*, 306 F.3d 1080, 1085 (11th
4  Cir.2002) and *United States v. Kim*, 193 F.3d 567, 573 (2nd
5  Cir.1999), establish that proof of the practices alleged in
6  paragraph 15 may also demonstrate a violation of Section
7  1324(a)(3) even if they also are violations of Section 1324a,
8  because the same facts may establish more than one violation of
9  law.  Defendants' contentions are germane to proof rather than to
10 the adequacy of the pleading.

11 It is arguable that the allegations in paragraphs 15 and 16
12 of the Complaint, if proven, may be sufficient circumstantial
13 evidence to show that Defendants had actual knowledge for
14 purposes of Section 1324(a)(3).  *See United States v. Mills*, 597
15 F.2d 693, 697 (9th Cir.1979)(jury can infer actual knowledge from
16 circumstantial evidence); *see also Mester Mfg. Co. v. INS*, 879
17 F.2d 561, 562-563 (9th Cir.1989).  As to the requirement of
18 knowledge, Defendants know exactly what alleged violations of
19 Section 274 are charged.

20 Plaintiff rejoins that the allegations in paragraph 15 can
21 be inferred to allege constructive knowledge by Defendants that
22 the persons were illegal aliens for purposes of 8 U.S.C. §
23 1324(a)(3).

24 In so arguing, Plaintiff refers to *McAllister*, a criminal
25 prosecution for violation of 8 U.S.C. § 1324 for transportation
26 of aliens who had illegally entered the United States.  To

14

1  establish the violation, the United States had to prove that

2  McAllister transported an alien "knowing that he [was] in the

3  United States in violation of law, and knowing or having

4  reasonable grounds to believe that his last entry in the United

5  States occurred less than three years prior thereto." 747 F.2d

6  at 1275.  The United States proposed to carry its burden of proof

7  by showing that McAllister made a conscious effort to avoid

8  acquiring the knowledge and requested a jury instruction based on

9  *United States v. Jewell*, 532 F.2d 697 (9th Cir.), *cert. denied*,

10  426 U.S. 951 (1976).  Over McAllister's objection, the district

11  court read to the jury the proposed *Jewell* instruction.  On

12  appeal, McAllister argued that there was insufficient evidence to

13  give the *Jewell* instruction.  The Ninth Circuit disagreed with

14  McAllister:

15      A *Jewell* instruction is properly given only
   when a defendant claims a lack of guilty

16  knowledge and there are facts in evidence
   that support an inference of deliberate

17  ignorance ... As we emphasized in *Murietta-Bejarano*, the cases in which the facts point

18  to deliberate ignorance are comparatively
   rare, and they must be carefully

19  distinguished from instances where the
   defendant was merely negligent.  The

20  Government may not carry its burden by
   demonstrating that the defendant was

21  mistaken, recklessly disregarded the truth,
   or was negligent in failing to inquire ...

22  Instead, the facts must support the inference
   that the defendant was aware of a high

23  probability of the existence of the fact in
   question ....  An instruction given without

24  an adequate factual basis may improperly lead
   the jury to infer guilty knowledge without

25  proof of conscious avoidance of the truth
   ....

26

15

The evidence in this case was sufficient to support the inference of deliberate ignorance. Several factors suggested a high probability that McAllister knew he was engaged in transporting aliens who had illegally entered within the last three years. These included the suddenness of the trip, the fact that it was made at 2:00 a.m., the lack of a specific destination, and the fact that Danny was traveling to Los Angeles also, but would not accompany the truck. McAllister testified he neither looked in the back of the truck nor asked what it contained. He stated he did not know or attempt to learn Danny's last name. He did not ask where he was going in Los Angeles or how he would return to San Diego. McAllister drove through the truck scales area that was closed, which avoided passing the normal border check-point where any aliens who had illegally entered could be discovered. His testimony concerning his reason for doing so was inconsistent and implausible and justified a reasonable inference that he did so because he believed illegal aliens were in the truck. These facts all indicate 'the defendant tried to close his eyes or ears to what was happening.' ... The inference is strengthened by the agents' observation that McAllister did not appear surprised to see the aliens when the back of the truck was opened. The use of the *Jewell* instruction thus was not error.

747 F.2d at 1275-1276.[2]

In their reply brief, Defendants assert that Plaintiff's reliance on *McAllister* is misplaced, in contending that the allegations in paragraph 15 suffice to establish Defendants' constructive knowledge that the persons being hired were illegal

---

[2]Plaintiff cites *United States v. Shannon*, 127 F.3d 1112, 1117-1118 (9th Cir.1998), which acknowledged that a *Jewell* instruction is improper if the evidence demonstrates no knowledge or actual knowledge, but affirmed the giving of the instruction because the evidence was in dispute.

aliens.   Reiterating that Section 1324(a)(3)(A) requires "actual

knowledge that the individuals are aliens", Defendants argue that

Plaintiff cites no case stating that "so-called willful blindness

meets the 'actual knowledge' standard of [Section 1324(a)(3)]."

Defendants contend:

> Violations of Section 274  were added
> predicate acts under the RICO statute (18
> U.S.C. § 1961(a)) in 1996, nearly ten years
> after the enactment of Section 274A, the
> administratively enforced employer sanctions
> provision of IRCA, P.L. 104-132, section 433.
> At the time Congress added section 274(a)(3)
> with an actual knowledge standard, it knew
> that section 274A existed with a lesser
> 'knowing' standard.  *See* P.L. 104-208, § 202;
> *see also Miles v. Apex Marine Corp.*, 498 U.S.
> 19, 32 (1990)('we assume the Congress is
> aware of existing law when it passes
> legislation.'); *United States v. Gonzalez-*
> *Mendez*, 150 F.3d 1058, 1060 (9th
> Cir.1998)('we presume that Congress enacts
> statutes with full knowledge of existing
> law.').

Defendants' argument goes to the adequacy and extent of

proof of knowledge, not the adequacy of pleading.  Whether or not

Plaintiff will be able to produce evidence to satisfy the actual

knowledge requirement for the predicate act is an issue for

summary judgment or trial.  Whether or not Plaintiff will be

entitled to rely on the *Jewell* standard of proof will depend on

the development of the facts and presents an issue that it is

premature to resolve on a Rule 12(b)(6) motion.[3]  No more is

required to meet Defendants' objection than to insert the word

---

[3]No  opinion  is  expressed  whether  the  willful  blindness
standard will be applicable to satisfy the actual knowledge element
of the predicate act.

"actual" or "actually" before the words "knowledge" or "knowing" in the Complaint.

Defendants go on to argue that the allegations in Paragraph 15 do not constitute illegal conduct.  Defendants contend:

> Implicit in the allegation in paragraph 15 of the Complaint is that persons who provide documents indicating that they are U.S. citizens or permanent residents at the time of hire must speak English to have attained either status.

Defendants assert that "such conclusory profiling" has been rejected by the Ninth Circuit, citing *United States v. Camacho-Davalos*, 468 F.2d 1382 (9th Cir.1972).

In *Camacho-Davalos*, defendants were convicted for conspiracy to smuggle and transport aliens into the United States in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1324, and for transporting three aliens in violation of 8 U.S.C. § 1324(a)(2).  In reversing these convictions, the Ninth Circuit held:

> The Government did not prove that any of the three persons named in the indictment as those whom Appellant transported were aliens. None of the alleged aliens were called as a witness.  The evidence that bears on the issue was the testimony of Agent Ainscoe that all of the people in the truck were 'Mexican appearing,' spoke Spanish, and did not produce immigration papers on request.  The description fits thousands of American citizens.  The failure to prove alienage defeated the Government's case on the three substantive counts.

468 F.2d at 1383.  This addresses proof of alienage, not the charge that the individuals transported were aliens.  Defendants mistakenly contend, had they imposed an English-speaking job

criterion on applicants for employment to validate their work
authorization status, they would have run the risk of violating
the national origin discrimination provisions of Title VII.

The Ninth Circuit has specifically held that the inability
to speak English is a factor, among others, which may be
considered in determining a defendant's knowledge that a person
is in the United States illegally. *See United States v. Holley*,
493 F.2d 581, 582-583 (9th Cir.), *cert. denied*, 419 U.S. 861
(1974).[4]  An inability to speak English, if combined with other
evidence, may allow the inference that Defendants had knowledge
that an applicant was an illegal alien.  Furthermore, Plaintiff
cites, *Robison Fruit Ranch, Inc. v. United States*, 147 F.3d 798,
799 (9th Cir.1998), which notes that the general anti-
discrimination provision in Section 1324b(a)(1) "prohibits
discrimination on the basis of national origin or citizenship
status, except, of course, against an alien who is not authorized
to work."

Defendants further argue that the allegation in Paragraph 15
that hiring workers who do not have housing indicates that the
workers are illegal aliens "is absurd on its face and without any
legal foundation, regardless of whether the workers claimed U.S.
citizen or permanent resident or some other legal status."

Because actual knowledge may be proved by circumstantial

---

[4]Whether the inability to speak English alone is an issue of
proof, not an issue which must be resolved at this stage of the
case.

19

evidence, the provision of housing may, if combined with other proof, support the inference that Defendants had actual knowledge.  This is a matter of proof, not pleading.

Defendants argue that the allegation in paragraph 15 that they have approved hiring criteria allowing "hiring of workers who present authorization documents which are invalid on their face because the pictures are of a different person, are upside down, are on poor quality paper, etc." does not suffice to allege "illegal conduct".  Defendants contend that by asking for more or different work authorization documents or by refusing to accept the documents proffered by applicants that appeared to be facially genuine, they would have violated the "unfair-immigration employment practice provisions of IRCA", citing 8 U.S.C. § 1324b(b)(6).[5]   8 U.S.C. § 1324a(b)(1)(A) provides that an employer satisfies its verification obligation by examining a document which "reasonably appears on its face to be genuine. *See Collins Foods Intern., Inc. v. U.S.I.N.S.,* 948 F.2d 549, 553 (9th Cir.1991).

Defendants' argument with regard to this allegation is without merit as it quibbles about evidentiary facts that the law does not require to be pleaded..  The allegation in paragraph 15 is that the documents are invalid on their face.  Whether or not this was true and to what extent is a matter of proof, not a pleading requirement.

---

[5]The correct citation is to 8 U.S.C. § 1324b(a)(6).

20

1    With regard to the allegations in paragraph 15 that

2  Defendants hire persons whose documents are invalid on their

3  face; that Defendants hire persons personally known to them to be

4  in the United States illegally and using false documents; and

5  that Defendants hire persons who have previously been employed

6  under different identities, Defendants contend that these actions

7  represent violations of Section 1324a and do not serve as a basis

8  for violation of the predicate Act of racketeering specified in

9  RICO.

10    Defendants' contention again is an argument of the efficacy

11  of evidentiary facts, not pleading.  *See United States v. Zheng,*

12  *supra; United States v. Kim, supra.*

13    Finally, with regard to the allegation in paragraph 16, that

14  Defendants "are often informed that large numbers of their

15  workers are using false social security numbers by the Social

16  Security Administration" but that "[m]ost of these workers then

17  simply assume new identities and continue to be employed,

18  pursuant to policies set by the Balakians", Defendants seek

19  dismissal because the allegations are "conclusory and

20  unsubstantiated" and, furthermore, can only be argued to be

21  evidence of knowledge of employment of undocumented workers in

22  violation of Section 1323a(a).

23    The allegation in Paragraph 16 satisfies the notice pleading

24  requirements of Rule 8.  It provides factual detail to infer how

25  Defendants actually knew their employees are illegal aliens.  The

26  facts, if established proved, may suffice to constitute "actual

knowledge".  Again, Defendants' argument goes to proof, not pleading.

Defendants' motion to dismiss on the ground that the Complaint fails to adequately allege violation of the predicate act, Section 1324(a)(3) is DENIED.

### b.  8 U.S.C. § 1324(a)(1)(A)(iii).

Defendants further argue that the Complaint does not adequately plead the predicate Act of violating 8 U.S.C. § 1324(a)(1)(A)(iii).

Section 1324(a)(1)(A)(iii) imposes criminal penalties on any person who:

> knowingly or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation ....

Defendants argue that the Complaint fails to allege that they knew that aliens came to, entered or remained in the United States in violation of law, fails to plead any facts from which it may be inferred that Defendants knew or demonstrated reckless disregard of facts related to the illegal entry or presence of undocumented aliens in the United States, and fails to adequately plead facts as to the individual defendants' violations of Section 1324(a)(1)(A)(iii).

Defendants further argue the allegations in paragraphs 18 that "the Balakians facilitate the hiring of many of these

22

illegal immigrants by directing their hiring-personnel [sic] to obtain housing for them" and in paragraph 22 that Defendants "conspir[ed] to provide them with housing" do not suffice to state a claim of harboring under Section 1324(a)(1)(A)(iii).

Defendants cite *Zavala v. Wal-Mart Stores, Inc.*, 393 F.Supp.2d 295, 306-307 (D.N.J.2005):

> Where, as here, the statute does not define certain of its terms, courts rely on the ordinary definitions of those terms ... Thus, to 'harbor' is to 'give shelter or refuge to' or 'to be the home or habitat of'; to 'conceal' is 'to prevent disclosure or recognition of' or 'to place out of sight'; and to 'shield' is to 'protect with or as if with a shield' or 'provide with a protective cover or shelter' or 'to cut off from observation' or 'hide.' *See* Merriam-Webster On-Line Dictionary ... None of the allegations sufficiently allege these acts.

> It is difficult to determine which allegations address concealment or shielding. The relevant allegations concerning harboring, however, relate to the facts surrounding the conviction of a former Wal-Mart contractor ... and to Plaintiff Kunc, who was 'lodged' and then 'put to work' by another Wal-Mart contractor ....

> These allegations are insufficient. For example, providing housing and employment may constitute 'harboring' for 'financial gain,' but this is not what has been alleged against Wal-Mart. *Zheng*, 306 F.3d at 1083 (involving undocumented aliens who lived in the defendant's house, without paying rent, and worked at the defendant's restaurant six days a week, twelve hours a day). Harboring also might be alleged where, in addition to employing undocumented aliens, a store owner, for example, also provides a back room of the store as a residence. *See United States v. Singh*, 261 F.3d 530, 533 (5th Cir.2001). Here, however, Plaintiffs allege that Wal-Mart hired, and continued to employ, Kunc,

despite its knowledge that Kunc was not authorized to work in the United States, not that Wal-Mart harbored illegal aliens.  A contractor's 'lodging' of an undocumented worker and 'putting him to work' falls short of alleging that Wal-Mart sheltered undocumented aliens for the purpose of concealing them and avoiding their detection by immigration authorities.  While this Court might infer from the allegations in the complaint that Wal-Mart recklessly disregarded the illegal status of Plaintiffs when it employed them as janitorial or maintenance workers at their various retail locations, it is unclear what alleged conduct by Wal-Mart might constitute the concealing, harboring or shielding of illegal aliens from detection.

Defendants argue from *Zavala* that the allegations that Defendants conspired to provide housing to illegal aliens and directed their hiring personnel to obtain such housing does not suffice to allege violation of the predicate Act set forth in Section 1324(a)(1)(A)(iii).  Defendants assert that there must be allegations that the housing was provided to illegal aliens to conceal them and avoid their detection by immigration authorities.  In so arguing, Defendants cite *United States v. Belevin-Ramales*, 458 F.Supp.2d 409 (E.D.Ky.2006)(rejecting United States' jury instruction for a violation of Section 1324(a)(1)(A)(iii) that the government does not have to prove that the Defendant harbored the alien with the intent to assist the alien's attempt to evade or avoid detection by law enforcement) and *United States v. Kim*, *supra*, 193 F.3d at 574 (evidence at trial was sufficient to establish that Kim knew or recklessly disregarded Farfan's status as an illegal alien and

24

took steps designed to help her remain in his employ).

*Zavala* does not support dismissal of this claim because of the allegation that Defendants directed their hiring personnel to obtain housing for them, something that is not alleged in *Zavala*. Furthermore, Ninth Circuit precedent in *United States v. Aguilar*, 883 F.2d 662, 689 (9th Cir.1989), *cert. denied*, 498 U.S. 1046 (1991) negates Defendants' argument.[6]  In *Aguilar*, the district court instructed the jury that acts of concealing or shielding consisted of conduct "tending to directly or substantially facilitate an alien's remaining in the United States unlawfully with the intent to prevent detection by the Immigration and Naturalization Service" and while harboring included "conduct tending to directly or substantially facilitate the alien's remaining in the United States in violation of law". However, the district court did not require an intent to aid the unlawful alien for the purpose of evading INS detection.  On appeal, the defendants contended that it was reversible error to strip "harboring" of an intent to evade detection.  *Id.* at 689.    The Ninth Circuit held in pertinent part:

> In *United States v. Acosta de Evans*, 531 F.2d 428 (9th Cir.), *cert. denied*, 429 U.S. 836 ... (1976), this court rejected the very claim that appellants are making in this case.  The court examined the legislative

---

[6]Not relevant to resolution of the motion to dismiss is the Ninth Circuit's discussion in *Aguilar* concerning defendants' conviction of smuggling in violation of 8 U.S.C. § 1324(a)(2)(B)(iii).  That aspect of the *Aguilar* decision has been superseded by statute.  *See United States v. Gonzalez-Torres*, 309 F.3d 594 (9th Cir.2002), *cert. denied*, 538 U.S. 969 (2003).

> history of section 1324(a) and case law from
> other circuits that already had addressed
> this issue, concluding that the word 'harbor'
> means 'to afford shelter to' and does not
> require an intent to avoid detection.  *Id.* at
> 430.  Appellants enumerate several reasons
> why we should 'reconsider' *Acosta de Evans.*

*Id.* at 690.  After noting that a panel not sitting *en banc* has no

authority to overturn Ninth Circuit precedent, the Ninth Circuit

concluded that even if *Acosta de Evans* were incorrectly decided,

the evidence established that the defendants intended to help the

two aliens in question to avoid INS detection.  *Id.*

Defendants' contention that *Aguilar* is not controlling

because it was not a pleading case and further argument that the

term "housing" does not fall within the ordinary definition of

"harbor", again relying on *Zavala*, is without merit.  *Aguilar* is

controlling because the alleged racketeering predicate acts for

purposes of RICO is "any Act which is indictable under the

Immigration and Nationality Act, section 274 (relating to

bringing in or harboring certain aliens) ...."  If an element is

not required for the criminal prosecution, it cannot be required

as an element for a racketeering act under RICO.

Defendants' motion to dismiss on the ground that the

Complaint does not adequately plead the predicate act of

violating 8 U.S.C. § 1324(a)(1)(A)(iii) is DENIED.

**3.   Failure to Adequately Plead Elements of RICO**

**Conspiracy**.

Defendants contend that the elements of a RICO conspiracy

under 18 U.S.C. § 1962(d) are not adequately plead.     In

26

addition, Defendants appear to argue that the allegations concerning the alleged RICO enterprise are also deficiently pleaded.

In *Baumer v. Pachl*, 8 F.3d 1341 (9th Cir.1993), the Ninth Circuit affirmed the dismissal for failure to state a claim of an alleged RICO conspiracy.  Although the Ninth Circuit specifically was addressing whether an allegation of aiding and abetting sufficed to state a claim for conspiracy under Section 1962(d), *id.* at 1347, the Ninth Circuit cited with approval cases holding an agreement is vital to a RICO conspiracy claim and that a RICO conspiracy requires the assent of each defendant, although it is not necessary that each conspirator know all of the details of the conspiracy.  *Id.* at 1346-1347.  The illegal agreement need not be express as long as its existence can be inferred from the words, actions, or interdependence of activities and persons involved.  *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 775 (9th Cir.2002).  In *Salinas v. United States*, 522 U.S. 52 (1997), the Supreme Court, reviewing a criminal RICO conviction, rejected the contention that there can be no conspiracy offense unless the defendant himself committed or agreed to commit the two predicate acts requisite for a substantive RICO offense under Section 1962(c), holding in pertinent part:

> A conspirator must intend to further an
> endeavor which, if completed, would satisfy
> all of the elements of a substantive criminal
> offense, but it suffices that he adopt the
> goal of furthering or facilitating the

27

criminal endeavor.  He may do so in any
number of ways short of agreeing to undertake
all of the acts necessary for the crime's
completion.  One can be a conspirator by
agreeing to facilitate only some of the acts
leading to the substantive offense.  It is
elementary that a conspiracy may exist and be
punished whether or not the substantive crime
ensues, for the conspiracy is a distinct
evil, dangerous to the public, and so
punishable in itself ....

It makes no difference that the substantive
offense under § 1962(c) requires two or more
predicate acts.  The interplay between
subsections (c) and (d) does not permit us to
excuse from the reach of the conspiracy
provision an actor who does not himself
commit or agree to commit the two or more
predicate acts requisite to the underlying
offense.  True, though an 'enterprise' under
§ 1962(c) can exist only with one actor to
conduct it, in most instances it will be
conducted by more than one person or entity;
and this in turn may make it somewhat
difficult to determine just where the
enterprise ends and the conspiracy begins,
or, on the other hand, whether the two crimes
are coincident in their factual
circumstances.  In some cases the connection
the defendant had to the alleged enterprise
or to the conspiracy to further it may be
tenuous enough so that his own commission of
two predicate acts may become an important
part of the Government's case.  Perhaps these
were the considerations leading some of the
Circuits to require in conspiracy cases that
each conspirator himself commit two or more
predicate acts.  Nevertheless, that
proposition cannot be sustained as definition
of the conspiracy offense, for it is contrary
to the principles we have discussed.

522 U.S. at 65-66.  In *Howard v. America Online, Inc.*, 208 F.3d

741, 751 (9th Cir.), *cert. denied*, 531 U.S. 828 (2000), the Ninth

Circuit applied *Salinas* to review of a Rule 12(b)(6) dismissal of

28

a civil RICO conspiracy claim:[7]

> 'A conspirator must intend to further an
> endeavor which, if completed, would satisfy
> all of the elements of a substantive criminal
> offense, but it suffices that he adopt the
> goal of furthering or facilitating the
> criminal endeavor.' *Salinas v. United
> States*, 522 U.S. 52, 65 ... (1997).  A
> defendant must also have been 'aware of the
> essential nature and scope of the enterprise
> and intended to participate in it. *Baumer v.
> Pachl*, 8 F.3d 1341, 1346 (9th Cir.1993) ...
> To establish a violation of section 1962(d),
> Plaintiffs must allege either an agreement
> that is a substantive violation of RICO or
> that the defendants agreed to commit, or
> participated in, a violation of two predicate
> offenses. ...

In *United States v. Fernandez*, 388 F.3d 1199 (9th Cir.2004), the

Ninth Circuit followed the rationale in *Smith v. Berg*, 247 F.3d

532 (3rd Cir.2001):

> We adopt the Third Circuit's *Smith* test,
> which retains *Reves'* operation or management
> test in its definition of the underlying
> substantive § 1962(c) violation, but removes
> any requirement that the defendant have
> actually conspired to operate or manage the
> enterprise itself.  Under this test, a
> defendant is guilty of conspiracy to violate
> § 1962(c) if the evidence showed that she
> 'knowingly agree[d] to facilitate a scheme
> which includes the operation or management of
> a RICO enterprise.'  *Smith*, 247 F.3d at 538.

388 F.3d at 1230.

In moving for dismissal, Defendants contend that the

Complaint's allegations of conspiracy are conclusory and preclude

---

[7]Defendants contend that *Salinas* is inapplicable because it involved a challenge to jury instructions in a criminal case, not the pleading requirements for a civil RICO Section 1962(d) conspiracy.  However, Ninth Circuit authority applies *Salinas* to civil RICO conspiracies.

them from knowing who the conspirators are, what conduct they carried out as part of the alleged conspiracy, and whether there was a common economic purpose or benefit derived.

Plaintiff responds that the Complaint adequately alleges a Section 1962(d) conspiracy.  Plaintiff points to the allegation that the Balakians "have personally approved the hiring procedures" alleged in paragraphs 15-16, which are alleged to ensure the employment of "vast numbers" of illegal aliens and that the Balakians have carried out the Illegal Immigrant Hiring Scheme for the last four years.  Plaintiff contends that these allegations adequately allege an agreement among the Balakians to commit well over two predicate acts of hiring and harboring illegal aliens.[8]

----

[8]Plaintiff, citing *Norfolk Monument Co., Inc. v. Woodlawn Mem. Gardens, Inc.*, 394 U.S. 700, 704 (1969), contends that "[i]n RICO and antitrust cases, conspiracies are typically proven not by direct evidence of agreement, which seldom exists, but of '[b]usiness behavior ....'."

In *Norfolk*, the Supreme Court reversed summary judgment for defendants in an antitrust case, holding in pertinent part:

> Nor do the other findings of the District Court necessarily dispel the inferences which the jury would be asked by the petitioner to draw.  The District Court found, for example, that there was "a wide divergence of prices" charged for installation "which would completely negative any systematic scheming or conscious parallelism." ... The petitioner's complaint, however, was not that the respondent cemeteries were charging uniform fees but that they were charging deliberately "excessive and unreasonable" fees for the purpose of injuring the petitioner.  The fact that the District Court appeared to consider dispositive of the conspiracy allegations was that the petitioner's principal officer

Plaintiff also refers to the allegations at paragraphs 24-25 that the "agreement was further to commit these racketeering acts through the Fruit Patch enterprise (and other unnamed entities the Balakians own and operate in the same manner)."  With regard to Defendants' assertion that the Complaint fails to allege the identities of the conspirators or how Defendants and the alleged conspirators participated the alleged conspiracy, Plaintiff contends:

> The Complaint ... describes in as much detail as Plaintiffs have prior to discovery, about how the Balakians carry out the Illegal Immigrant Hiring Scheme.  The names of all co-conspirators need not be pled, nor must the Complaint spell out what each conspirator 'did to participate in the conspiracy,' as the <u>Salinas</u> court specifically held.  All that is required is that the Complaint alleges each conspirator 'know about and facilitate the scheme,' which is plainly alleged.

The Complaint does not adequately allege a conspiracy under

---

> "admitted that he has no letters, agreements, correspondence, or any other testimonials to a conspiracy among the several defendants ..." ... But it is settled that "[n]o formal agreement is necessary to constitute an unlawful conspiracy," ... and that "business behavior is admissible circumstantial evidence from which the fact finder may infer agreement." ....

394 U.S. at 703-704.

Plaintiff's citation to *Norfolk* is not relevant to the determine the adequacy of pleading the agreement for purposes of a Section 1962(d) conspiracy under RICO.  *Norfolk* involved antitrust, not RICO.  Although Plaintiff asserts that *Norfolk*'s holding applies to RICO cases, he cites no specific authority supporting that position.

Section 1962(d).  Although the allegations concerning the alleged

conspiracy by the Balakians and Roberto Olivarez in connection

with Fruit Patch Inc. suffice to withstand Rule 12(b)(6)

dismissal given the requirements of notice pleading, the

allegations of conspiracy with unnamed entities and unnamed

conspirators involved with those unnamed entities does not comply

with notice pleading and essentially allows Plaintiff to conduct

a fishing expedition to substantiate these allegations.  A

conspiracy is an agreement to commit an unlawful act, coupled

with an overt act in furtherance of the conspiracy.

　　　Therefore, to the extent that the Complaint purports to

allege a RICO conspiracy by unnamed entities and unnamed

conspirators involved with those entities, Defendants' motion to

dismiss is GRANTED with leave to amend.[9]

**B.   <u>Plaintiff's Motion for Sanctions</u>.**

　　　Plaintiff moves for sanctions against Defendants and their

counsel, Monte B. Lake, pursuant to Rule 11(b)(2), Federal Rules

of Civil Procedure, for filing the Motion to Dismiss without

citing *Mendoza v. Zirkle Fruit Co.*, *supra,* 301 F.3d 1163.  The

Motion for Sanctions seeks an order striking Defendants' Motion

---

[9]Defendants, citing *Chang v. Chen*, 80 F.3d 1293 (9th Cir.1996),
contend that it is impossible to determine if the alleged RICO
enterprise has an ascertainable structure separate and apart from
the structure inherent in the conduct of the pattern of
racketeering activity when no facts are provided regarding the co-
conspirators.  *Chang v. Chen*, addressed "the minimum requirements
for an associated-in-fact enterprise." *Id.* at 1297.  As Plaintiff
notes, an "association-in-fact" enterprise is not alleged in the
Complaint.  Fruit Patch, Inc. and the other unnamed Balakian owned
and operated entities are alleged to be the enterprise(s).

to Dismiss and an award of attorneys' fees incurred by Plaintiff
in opposing the Motion to Dismiss and for preparing the Motion
for Sanctions.

Rule 11(b)(2) provides in pertinent part:

> By presenting to the court (whether by
> signing, filing, submitting, or later
> advocating) a ... written motion ..., an
> attorney ... is certifying that to the best
> of the person's knowledge, information, and
> belief, formed after an inquiry reasonable
> under the circumstances,-
>
> ...
>
> (2) the claims, defenses, and other
> legal contentions therein are warranted by
> existing law or by a nonfrivolous argument
> for the extension, modification, or reversal
> of existing law or the establishment of new
> law ....

Rule 11(c) provides in pertinent part:

> If ... the court determines that subdivision
> (b) has been violated, the court may, subject
> to the conditions stated below, impose an
> appropriate sanction upon the attorneys, law
> firms, or parties that have violated
> subdivision (b) or are responsible for the
> violation.

In *United States v. Stringfellow*, 911 F.2d 225, 226 (9th
Cir.1990), the Ninth Circuit held:

> The failure to cite relevant authority,
> whether it be case law or statutory
> provisions, does not alone justify the
> imposition of sanctions.  '[N]either Rule 11
> nor any other rule imposes a requirement that
> the lawyer, in addition to advocating the
> cause of his client, step first into the
> shoes of opposing counsel to find all
> potentially contrary authority, and finally
> into the robes of the judge to decide whether
> the authority is indeed contrary or whether
> it is distinguishable.'  *Golden Eagle*

33

> *Distrib. Corp. v. Burroughs Corp.*, 801 F.2d
> 1531, 1542 (9th Cir.1986).
>
> However, if the omitted case law and
> statutory provisions would render the
> attorney's argument frivolous, he or she
> 'should not be able to proceed with impunity
> in real or feigned ignorance of [them],' *id.*,
> and sanctions should be upheld.  An argument
> contained in a motion is frivolous under Rule
> 11 if it is unreasonable when viewed from the
> perspective of 'a competent attorney admitted
> to practice before the district court.'
> *Zaldiver v. City of Los Angeles*, 780 F.2d
> 823, 830 (9th Cir.1986); *see also Eastway
> Constr. Corp. v. City of New York*, 762 F.2d
> 243, 254 (2nd Cir.1985)('[W]here it is
> patently clear that a claim has absolutely no
> chance of success under the existing
> precedents, and where no reasonable argument
> can be advanced to extend, modify, or reverse
> the law as it stands, Rule 11 has been
> violated.').

Plaintiff argues that the Complaint in this action "makes precisely the same allegations as were made in <u>Mendoza</u>; that the defendants knowingly employ large numbers of illegal immigrants in violation of sec. 274 of the Immigration and Nationality Act which is a RICO predicate offense" and that no reasonable lawyer could assert that the Complaint fails to state a claim and omit citing *Mendoza*.  Plaintiff contends that *Mendoza* directly applies and has not been modified by any other Ninth Circuit authority.

Plaintiff's motion is DENIED.  Defendants have not violated have not violated Rule 11 as interpreted by *Stringfellow* by omitting to cite *Mendoza* in their opening brief.  There are substantial differences between the Complaint at issue in *Mendoza* and the Complaint in this action.  The basis of Defendants' motion to dismiss includes that Plaintiff has not and cannot

34

plead the necessary elements of the RICO predicate acts upon which he intends to rely and because Plaintiff provides insufficient factual notice to Defendants of the basis for these claims.   Finally, the issues before the Ninth Circuit in *Mendoza* involved standing, an issue not raised in this action.

**C.   Conclusion**.

For the reasons set forth above:

1.   Defendants' motion to dismiss is GRANTED IN PART WITH LEAVE TO AMEND AND DENIED IN PART.

2.   Plaintiff shall file a First Amended Complaint in compliance with this Order within 30 days of the filing date of this Order.

3.   Plaintiff's motion for sanctions is DENIED.

IT IS SO ORDERED.

Dated:   **March 23, 2007**                    **/s/ Oliver W. Wanger**
668554                                               UNITED STATES DISTRICT JUDGE

35