1

2              IN THE UNITED STATES DISTRICT COURT FOR THE

3                   EASTERN DISTRICT OF CALIFORNIA

4

5   JOSE HERNANDEZ, individually  )        No. CV-F-06-1383 OWW/DLB
    and on behalf of all others   )
6   similarly situated,           )        ORDER DENYING PLAINTIFF'S
                                  )        MOTION TO STRIKE DEFENDANTS'
7                                  )        AFFIRMATIVE DEFENSES (Doc.
                                  )        50)
8              Plaintiff,         )
                                  )
9         vs.                     )
                                  )
10                                 )
    LEO BALAKIAN, ANTHONY         )
11  BALAKIAN, and VINCE BALAKIAN, )
                                  )
12             Defendants.        )
                                  )
13                                 )
    _____)
14

15       Before the court is Plaintiff's motion to strike pursuant to

16  Rule 12(f), Federal Rules of Civil Procedure, the seven

17  affirmative defenses asserted by Defendants in their Answer to

    Plaintiff's First Amended Complaint (FAC).
18
         The FAC is a class action for violation of the Racketeer
19
    Influenced and Corrupt Organizations Act (RICO) on behalf of "all
20
    legal hourly-paid workers, who have been employed by Fruit Patch,
21
    Inc. of Reedley, California.  The FAC alleges that Plaintiff "was
22
    legally authorized to be employed in the U.S. when he was
23
    employed by Fruit Patch, Inc., as an hourly paid farmworker",
24
    that his "wages as an agricultural worker for Fruit Patch, Inc.
25
    were set by the Balakians at a level which was depressed as a
26

                                    1

direct result of the Illegal Hiring Scheme they perpetrated", FAC ¶ 3, and that "if the Balakians were not hiring large numbers of illegal immigrants, their business would have to pay the Plaintiff Class significantly higher wages, and their profits would be sharply reduced."  FAC ¶ 14.

**A.  GOVERNING STANDARDS.**

Rule 12(f), Federal Rules of Civil Procedure provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

Rule 8(b), Federal Rules of Civil Procedure, provides that "[a] party shall state in short and plain terms the party's defenses to each claim asserted ...."  Rule 8(c) requires the affirmative pleading of 19 separate defenses and of "any matter constituting an avoidance or affirmative defense."

"Affirmative defenses plead matters extraneous to the plaintiff's prima facie case, which deny plaintiff's right to recover, even if the allegations of the complaint are true." *FDIC v. Main Hurdman*, 655 F.Supp. 259, 262 (E.D.Cal.1987), *citing Gomez v. Toledo*, 446 U.S. 635, 640-641 (1980).  "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense."  *Wyshak v. City National Bank*, 607 F.2d 824, 827 (9th Cir.1979), *citing Conley v. Gibson*, 355 U.S. 41 (1957).  As explained in Wright & Miller, Federal Practice and Procedure: Civil 3d § 1381, pp. 421-425:

2

> Motions to strike a defense as insufficient
> are not favored by the federal courts because
> of their somewhat dilatory and often
> harassing character.  Thus, even when
> technically appropriate and well-founded,
> Rule 12(f) motions often are not granted in
> the absence of a showing of prejudice to the
> moving party.  Nonetheless, these motions are
> a useful and appropriate tool when the
> parties disagree only on the legal
> implications to be drawn from uncontroverted
> facts.  But even when the defense seems to
> present a purely legal question, federal
> courts are very reluctant to determine
> disputed or substantial issues of law on a
> motion to strike; these questions quite
> properly are viewed as best determined only
> after further development by way of discovery
> and a hearing on the merits, either on a
> summary judgment motion or at trial.

**B.   MERITS OF MOTION.**

 **1.   FIRST AFFIRMATIVE DEFENSE.**

As the First Affirmative Defense, the Complaint alleges "Plaintiff fails to state a claim upon which relief may be given."

Plaintiff, citing *Quintana v. Baca*, 233 F.R.D. 562, 563 (C.D.Cal.2005), contends that a failure to state a claim upon which relief can be granted is not a valid affirmative defense. *Quintana v. Baca* held:

> The Court agrees with the plaintiff that this
> defense is not an affirmative defense that
> must be pled or waived.  Nor all contentions
> that attack a plaintiff's cause of action are
> affirmative defenses.  Rather, a defense is
> an affirmative defense if it will defeat the
> plaintiff's claim even where the plaintiff
> has stated a prima facie case for recovery
> under the applicable law ... The first
> affirmative defense directly attacks the
> merits of the plaintiff's case, and therefore
> is not subject to the requirements of

3

1        Fed.R.Civ.P., Rule 8(c).

2    However, Rule 12(h)(2), Federal Rules of Civil Procedure,

3 provides:

4            A defense of failure to state a claim upon
             which relief can be granted ... may be made
5            in any pleading permitted or ordered under
             Rule 7(a), or by motion for judgment on the
6            pleadings, or at the trial of the merits.

7 One of the pleadings permitted by Rule 7(a) is an Answer.

8 Consequently, *Quintana*'s reasoning is legally inaccurate and not

9 persuasive. Plaintiff's motion to strike the First Affirmative

10 Defense on this ground is DENIED.

11    Plaintiff further moves to strike the First Affirmative

12 Defense because the Order filed on March 27, 2007 concluded that

13 Plaintiff had stated a claim upon which relief can be granted

14 under RICO.  Therefore, Plaintiff contends, this ruling is now

15 law of the case.  *See Christianson v. Colt Industries Operating*

16 *Corp.*, 486 U.S. 800, 815-816 (1988)('As most commonly defined,

17 the doctrine of the law of the case posits that when a court

18 decides upon a rule of law, that decision should continue to

19 govern the same issues in subsequent stages in the same case").

20    Defendants respond that the March 27, 2007 Order does not

21 preclude the First Affirmative Defense because the Court has not

22 been asked to rule on the sufficiency of the allegations of the

23 First Amended Complaint.  Further, referring to *Jones v. Tozzi*,

24 2006 WL 2472752 (E.D.Cal.2006), Defendant argues that Plaintiff's

25 implicit assumption that the law of the case doctrine precludes a

26 challenge to an amended complaint when the original complaint has

                              4

survived a motion to dismiss, is incorrect.

Plaintiff replies that Defendants should have brought a Rule 12(b)(6) motion to challenge the sufficiency of the First Amended Complaint and further notes that the plaintiff in *Jones v. Tozzi* made substantially different allegations in his amended complaint.

The motion to strike the First Affirmative Defense is DENIED.  There is no prejudice to Plaintiff.

### 2.   SECOND AND THIRD AFFIRMATIVE DEFENSES.

The Second Affirmative Defense alleges: "Plaintiff has not sustained damages as alleged in the Amended Complaint."  The Third Affirmative Defense alleges: "Plaintiff has not suffered any injury proximately cause by any conduct alleged in the Amended Complaint under the Racketeer Influenced and Corrupt Organizations Act."

Plaintiff moves to strike these affirmative defenses on the ground that they merely deny the allegations in the First Amended Complaint that Plaintiff must prove to prevail on his claims.

Defendants argue that these affirmative defenses should not be stricken because they are not "immaterial, impertinent, or scandalous", their presence in the Answer does not prejudice Plaintiff in any way, and whether notice of these defenses should be in the Answer "is an example of unnecessary formalism."

While it appears that Plaintiff's position is legally correct, it also appears that Plaintiff's motion with regard to these affirmative defenses is, as Defendant asserts, an

"unnecessary formalism" wasting the time and resources of the parties and the Court.  The motion is DENIED without prejudice to resolution by dispositive motion.

### 3.  FOURTH AFFIRMATIVE DEFENSE.

The Fourth Affirmative Defense alleges: "Plaintiff's claims are barred, in whole or in part, because at all times during his employment plaintiff was paid a lawful wage and a wage for which he agreed to work."

Plaintiff argues that the Fourth Affirmative Defense should be stricken because the fact that he was paid a legal wage will not defeat the RICO claim, as is required for a valid affirmative defense.  *See discussion supra*.  The FAC does not allege that the wage paid to Plaintiff was not "legal" but, rather, that the wage was lower than it would have been had Defendants not hired illegal aliens.  Plaintiff contends that the fact he agreed to work at a legal wage does not defeat the RICO claim because the RICO claim cannot be waived or defeated by Plaintiff's conduct.

Plaintiff cites case authority that broad common law defenses such as unclean hands are not recognized in actions under federal statues, such as antitrust and securities fraud.

In *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 138 (1968), the Supreme Court held:

> There is nothing in the language of the antitrust acts which indicates that Congress wanted to make the common-law in pari delicto doctrine a defense to treble-damages actions ... We have often indicated the inappropriateness of invoking broad common-law barriers to relief where a private suit

6

serves important public purposes.

In *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299 (1985), the District Court dismissed an action by investors for violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5, on the ground that, because the investors themselves had violated the same laws under which recovery was sought by trading on inside information, they were *in pari delicto* and thus were barred from recovery.   The Ninth Circuit reversed the District Court.   The Supreme Court affirmed the Ninth Circuit, holding in pertinent part:

> Nothing in *Perma Life* suggested that public policy considerations should govern only where Congress expressly provides for private remedies; the classic formulation of the *in pari delicto* doctrine itself required a careful consideration of such implications before allowing the defense ... Moreover, we repeatedly have emphasized that implied private actions provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to Commission action.' ...  In addition, we have eschewed rigid common-law barriers in construing the securities laws ... We therefore conclude that the views expressed in *Perma Life* apply with full force to implied causes of action under the federal securities laws.   Accordingly, a private action for damages in these circumstances may be barred on the grounds of the plaintiff's own culpability only where (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public.

472 U.S. at 310-311.

1    Plaintiff acknowledges that neither the Ninth Circuit or the

2  Supreme Court have considered the applicability of the *Perma Life*

3  line of cases to a private claim for violation of RICO.

4  Plaintiff cites *In re National Mortgage Equity Corp. Mortgage*

5  *Pool Certificates Securities Litigation,* 636 F.Supp. 1138, 1156

6  (C.D.Cal.1986):

> This argument although not framed as such is,
> in essence, the assertion of the *in pari*
> *delicto* defense and can be answered by
> another analogy to antitrust law.  The
> Supreme Court has held that the common law
> doctrine of *in pari delicto* is not a defense
> in antitrust treble damage actions.  *Perma*
> *Life Mufflers, Inc. v. International Parts*
> *Corp.,* 392 U.S. 134 ... (1968).  The Court
> cautioned against 'invoking broad common-law
> barriers to relief where a private suit
> serves important public purposes.' *Id.* at 138
> ... Thus, even though a plaintiff seeking
> treble damages in an antitrust suit may be as
> morally reprehensible as the defendant, his
> suit nonetheless should be encouraged to
> advance the predominant public policy in
> favor of competition.  *Id.* at 139 ....
>
> The reasoning is equally applicable to RICO
> treble damages actions.  The fact, if it be a
> fact, that B of A may to some extent be
> embarking on this litigation with unclean
> hands should not by itself prohibit the Bank
> from bringing an action that otherwise
> advances RICO's broad anti-racketeering
> policies.

21  Plaintiff also cites the "Order re Affirmative Defenses" filed

22  on February 23, 2004 in *Mendoza v. Zirkle Fruit Company*, No. CY-

23  00-3024-FVS, United States District Court for the Eastern

24  District of Washington:

> COMMON LAW DEFENSES
>
> The defendants allege the plaintiffs knew

8

about the presence of illegal workers at both Zirkle Fruit Company and Matson Fruit Company.  The defendants claim the plaintiffs had a duty to report immigration violations to their employers or to an appropriate government agency.  To the extent the plaintiffs failed to do so, say the defendants, they are barred from recovery by the doctrines of contributory fault, contributory negligence, waiver, consent, acquiescence, ratification, estoppel, *in pari delicto*, unclean hands, equal involvement, payment, failure to mitigate, and/or assumption of the risk.

...

Neither the Supreme Court nor the Ninth Circuit has decided whether the affirmative defenses listed above may be invoked in a civil RICO case.  Case law in other circuits is inconclusive.  *See, e.g., Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1366 n.41 (11th Cir.2002)(positing that a gambler might be barred by the doctrine of unclean hands from bringing a civil RICO claim predicated on illegal gambling because it takes two parties to gamble); *Roma Const. Co. v. aRusso*, 96 F.3d 566, 575 (1st Cir.1986)(even if RICO's civil remedies are limited to innocent parties, the district court erred by dismissing the plaintiffs' claims); *Northeast Women's Ctr., Inc. v. McMonagle*, 868 F.2d 1342, 1355-56 (3rd Cir.)(unclean hands doctrine inapplicable where plaintiff's unlawful conduct was insufficiently related to the litigation), *cert. denied,* 493 U.S. 901 ... (1989).  Since the law in this area is unsettled, district courts have looked to antitrust cases for guidance.  *See, e.g., In re National Mortgage Equity Corp. Mortgage Pool Cert. Sec. Litig.*, 636 F.Supp. 1138, 1156) (C.D.Cal.1986).  The defendants challenge the validity of the analogy to antitrust cases.  They submit the policy considerations that drive antitrust jurisprudence are much different from the policy considerations that drive civil RICO jurisprudence.  The defendants' argument is not without merit.  There are significant differences between the Clayton Act and RICO.

9

See Loren E. Kalish, Comment, *Plaintiffs in Complicity: Should there be an innocent party requirement for civil RICO actions?,* 47 Emory L.J. 785, 802-08 (1998).  However, even if the analogy to the Clayton Act is imperfect, *Roma Constr. Co.*, 96 F.3d at 583 (Lynch, J., concurring), the fact remains that the Supreme Court has relied upon Clayton Act cases when interpreting RICO.  *Id.* at 581; *Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303, 1311 (9th Cir.1992), *cert. denied,* 507 U.S. 1004 ... (1993).  Given this well-established practice, antitrust jurisprudence appears to provide the best guidance with respect to the Supreme Court's likely response to a request to incorporate common-law defenses into civil RICO actions.

One of the common-law defenses that has been discussed in federal antitrust cases is the defense of *in pari delicto*, which means literally 'of equal fault.' ... In *Perma Life*, the Supreme Court held that Congress did not intend to incorporate this defense into antitrust laws.  'We have often indicated,' said the Supreme Court, 'the inappropriateness of invoking broad common-law barriers to relief where a private suit serves important public purposes.' ... Despite this observation, five Justices opined, in separate opinions, 'that where a plaintiff truly [bears] at least substantially equal responsibility for the violation, a defense based on such fault -- whether or not denominated in pari delicto -- should be recognized in antitrust litigation.'  *Batemen Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 308-09 ... (1985) ... In *Bateman Eichler*, the Supreme Court addressed the issue that had been left open in *Perma Life*.  It held a private action for damages based upon the violation of federal securities laws may be barred on the grounds of the plaintiff's own culpability if the defendant proves '(1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the

investing public.' *Id.* at 310-11 ... The
Supreme Court continues to adhere to the
*Bateman Eichler* test.  *Pinter v. Dahl*, 486
U.S. 622, 633-35 ... (1988).

Assuming the Supreme Court continues to look
to antitrust cases when interpreting RICO, it
is unlikely the Supreme Court will approve
the broad common-law barriers to relief
proposed by the defendants.  Consequently,
the affirmative defenses listed above will be
stricken.  This is not to say the plaintiffs'
behavior as job applicants and employees is
irrelevant.  It seems likely that, in actions
such as this, the Supreme Court will adopt
the *Bateman Eichler* test, or some variation
thereon.  Whether the defendants will be able
to qualify for a jury instruction based on
*Bateman Eichler* is doubtful, but not
impossible.  Since it cannot be said as a
matter of law, that the defendants will be
unable to satisfy the requirements of *Bateman
Eichler*, the defendants will be allowed to
amend their answers to add this defense.

Relying on these cases, Plaintiff argues that the Fourth
Affirmative Defense must be stricken:

If the Balakian's [sic] argument, that a
plaintiff consents, and therefore waives his
right to later sue, by purchasing something
at a anticompetitive price, then no antitrust
action could ever prevail, because this is
the factual scenario in the majority of
antitrust disputes ... Accordingly, the
agreement to purchase as good or service at
an anticompetitive price is not an antitrust
defense, and the same rule applies in RICO.
Mr. Hernandez did not waive his right to
challenge his wage rate by accepting it.

Defendants respond that Plaintiff has misread the Fourth
Affirmative Defense because it does not pertain to waiver or
consent but to a "different and much broader point."  Defendants
assert:

The labor market in which both Plaintiff and

11

the Balakians participated is vast and is highly regulated by the Federal Government and the State of California.  Plaintiff effectively concedes that the Balakians complied with all of these laws when Plaintiff argues that the alleged wrong was not that he was paid below applicable statutory limits, but that the wage he was paid was lower than it otherwise would have been ... The Fourth Defense goes to any claim, direct or indirect, that the payment of wages was unlawful as a result of some antecedent alleged wrongdoing.  It is clearly proper.  As with the other defenses, Defendant will be able to litigate this defense even if stricken from the Answer. The Court should avoid flyspecking the pleadings, permit discovery to identify the precise issues for trial, and decline to strike the Fourth Defense.

Plaintiff replies that, because Defendants did not respond to the grounds asserted by Plaintiff for striking the Fourth Affirmative Defense, i.e., it is not valid to defeat the RICO claim, and a waiver defense is not available under RICO, Defendants have conceded the validity of these grounds. Plaintiff further replies that Defendants' position is really a denial of fact and should be stricken as redundant.[1]

Because this is an unsettled area of the law Plaintiff's motion to strike the Fourth Affirmative Defense is DENIED. Whether the Fourth Affirmative Defense is valid will depend on the development of facts through discovery, summary judgment and/or trial.  No prejudice results.

---

[1]In a footnote to the reply brief, Plaintiff argues that the Fourth Affirmative Defense is ambiguous and should be stricken on this basis.  Because this ground was raised for the first time in the reply brief, it is not considered.

12

1          **4.   <u>FIFTH AFFIRMATIVE DEFENSE</u>.**

2          The Fifth Affirmative Defense alleges: "Assuming, *arguendo*,

3  that plaintiff sustained any injury, he failed to mitigate it."

4          Plaintiff moves to strike the Fifth Affirmative Defense

5  because it fails to provide any real notice as to how Plaintiff

6  failed to mitigate his damages.

7          Defendants respond that the Fifth Affirmative Defense

8  provides as much notice to Plaintiff as is available to

9  Defendants without discovery.  Defendants assert that Plaintiff

10 could have sought to work for another employer if he wanted to

11 make more money and that the details of Plaintiff's efforts will

12 be a subject for discovery.

13         Relying on the cases cited in connection with the Fourth

14 Affirmative Defense, Plaintiff further contends that failure to

15 mitigate is not a valid defense to a RICO claim.

16         However, as Plaintiff acknowledges and Defendants point out,

17 the United States District Court for the Eastern District of

18 Washington recognized a failure to mitigate affirmative defense

19 to a civil RICO action in *Marin v. Evans*, 2007 WL 655456

20 (E.D.Wash.2007).[2]

21         In *Marin v. Evans*, the District Court refused to strike the

22 affirmative defense of duty to mitigate:

23 _____

24         [2]Plaintiff asserts that the Eastern District of Washington
   "strayed" from its prior holding in *Mendoza v. Zirkle Fruit Co.*
25 However, the two decisions were issued by different District Court
   Judges.  A District Court Judge is not bound by a decision of
26 another District Court Judge, even in the same district.

Plaintiffs argue that a duty to mitigate
defense cannot be asserted against a RICO
claim.  RICO prohibits individuals or
enterprises from engaging in a pattern of
racketeering activity ... The purpose of RICO
is to protect: (1) lawful enterprises from
being utilized by individuals for unlawful
purposes; and (2) the public from individuals
who would use an enterprise as a tool to
facilitate illegal activity ....

The Court did not find any federal case law
dealing with the precise issue of whether a
duty to mitigate is a legally sufficient
defense against a RICO claim.  Generally,
when there is an unsettled area in RICO law,
the federal courts can turn to antitrust law
for guidance.  *Imagineering, Inc. v. Kiewit
Pacific Co.*, 976 F.2d 1303, 1311 (9th
Cir.1992).  In dealing with the question of
whether broad common law defenses are allowed
in antitrust claims, the courts examine
whether the common law defense controverts
the primary purposes underlying the
particular federal statute in question.
*Perma Life Mufflers, Inc. v. Int'l Parts
Corp.* ....

Plaintiffs cite to *Perma Life* and *Bateman
Eichler, Hill Richards, Inc. v. Berner* ....
for the proposition that a failure to
mitigate 'is not a recognized affirmative
defense to RICO claims.'  In *Perma Life*, the
Supreme Court rejected the idea that courts
have the power to undermine the antitrust
acts by denying recovery to injured parties
merely because they were *in pari delicto* ...
There, the Supreme Court indicated that it
would be inappropriate to invoke broad
common-law barriers to relief where a private
suit served important purposes ... More
importantly, however, the Court reserved
ruling on whether truly complete involvement
and participation could be a basis for
barring a plaintiff's antitrust action
because the record before the Court did not
support such a finding ....

In so ruling, the Supreme Court in *Perma Life*
implied that a factual inquiry would be
necessary to determine whether an affirmative

14

defense based on the plaintiff's culpability could be asserted against an antitrust claim. This conclusion finds further support in *Bateman*.  Indeed, the Supreme Court in *Bateman* explicitly held that a [sic] *in pari delicto* [sic] could be asserted in a federal securities case when certain factual circumstances were present ....

Moreover, other circuits have recognized the affirmative defense of failure to mitigate in claims brought under federal statutes.  *See In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 149-50 (2nd Cir.2001)(noting that a duty to mitigate in antitrust claims serves the important purpose of preventing plaintiffs from seeking treble damages and profiting by refusing to mitigate)(Jacobs, CJ., dissenting); *Fishman v. Estate of Wirtz*, 807 F.2d 520, 559 (7th Cir.1987)(the plaintiff is required to mitigate damages, but the plaintiff is not required to engage in undue risk to mitigate); *Litton Systems v. AT&T*, 700 F.2d 785, 820 n.47 (2nd Cir.1983)(stating without explanation that a defendant has a duty to mitigate in an antitrust claim); *see also Bieter Co. v. Blomquest*, 987 F.2d 1319, 1329 (8th Cir.1993)(appearing to operate under the assumption that a duty to mitigate is a valid defense in RICO claims).

Here, there is no case law on point that directly supports the argument that the Court should rule, as a matter of law, that the affirmative defense of failure to mitigate can never be asserted in a civil RICO claim. Even if the Court were to analogize to an antitrust case, those cases relied upon by Plaintiffs do not establish that such an affirmative defense can never be asserted as a matter of law.  Instead, these cases support the conclusion that the Court should consider the facts of the case in determining whether a defendant can assert an affirmative defense at trial.  Thus, the Court declines to strike this affirmative defense at this stage in the proceedings.

Plaintiffs argue that the law regarding application of the

1   failure to mitigate defense is "unclear" and that *Marin* is

2   wrongly decided.   Plaintiff asserts that "most" of the cases

3   cited in *Marin* as allowing the defense in an antitrust case

4   predate *Bateman Eichler.*

5       Plaintiff's position is without merit.   *Bateman Eichler* was

6   decided in 1985.   Only one of the cases cited in *Marin* was

7   decided before *Bateman Eichler*.   Further, as *Marin* notes, *Bateman*

8   *Eichler* does not preclude the *in pari delicto* defense in a

9   securities violation case as a matter of law.

10      Plaintiff further argues that *Bieter Co. v. Blomquest*,

11  *supra*, 987 F.2d at 1329, cited in *Marin*, does not actually hold

12  that failure to mitigate is an available affirmative defense to a

13  civil RICO claim.   The Eighth Circuit, discussing RICO's

14  requirement of injury to "business or property", held:

15              Other courts have recognized that civil RICO
                is 'a statutory tort remedy – simply one with
16              particularly drastic remedies' ... It
                follows, then, that limitations on damages
17              suggested by tort law would also apply to
                civil RICO.   Defendants' arguments that
18              Bieter's failure to reapply results in no
                cognizable injury under RICO would be better
19              made to a jury under the rubric of failure to
                mitigate damages ... Through we find that
20              Bieter was injured, a jury would certainly be
                expected to consider evidence of the
21              potential uses of Bieter's property that may
                not have been pursued, as opposed to simply
22              granting damages for the difference between
                the undeveloped and developed property
23              values.

24      Plaintiff further argues that *Bhan v. NME Hospitals, Inc.*,

25  669 F.Supp. 998, 1014 (E.D.Cal.1987), *aff'd*, 929 F.2d 1404 (9th

26  Cir.1991), cited by Defendants in opposition to Plaintiff's

16

motion, does not recognize the affirmative defense of failure to mitigate in an antitrust action:

> Bhan has demonstrated without a doubt that he suffered actual damages as a result of the alleged conspiracy of the defendants. The conduct in issue destroyed Bhan's business at Manteca Hospital, causing him to lose all that he would have made at the Hospital absent the decision to prohibit nurse anaesthetists from providing anesthesia. The fact that Bhan was able to mitigate his damages by successfully creating another business does not negate the fact that he sustained damages. Indeed, the principle of mitigation of damages presumes that there are damages to mitigate. To provide an antitrust violator immunity from suit simply because the victim successfully mitigates his damages would undermine the antitrust laws' broad goal of restraining anticompetitive conduct.

Given the unsettled state of the law and the holding in *Bateman Eichler*, Plaintiff's motion to strike the Fifth Affirmative Defense is DENIED. Failure to mitigate does not negate the claim; rather it requires that the claimant not act or omit to unjustifiably increase damages. Whether the Fifth Affirmative Defense is valid will depend on the development of facts through discovery, summary judgment and/or trial.

    5.  Sixth Affirmative Defense.

The Sixth Affirmative Defense alleges: "To the extent that plaintiff alleges that this is a class action, the prerequisites to a class action provided by Fed.R.Civ.P Rule 23(a) do not exist in this action."

Plaintiff moves to strike on the ground that this is not a valid affirmative defense. Plaintiff notes that Rule 23(c)(1)(A)

17

provides that class certification must occur "at an early
practicable time". Therefore, the issue of class certification
will be decided before resolution of the merits of this action
and will not defeat Plaintiff's underlying RICO claim.

Defendants respond that the Sixth Affirmative Defense "is a
short and plain way of emphasizing that the prerequisites for
class certification and whether Plaintiff can meet them is a
significant issue."  Because, Defendants contend, Plaintiff is
not prejudiced by the Sixth Affirmative Defense, it should not be
stricken.

This is not an affirmative defense.  The issue will be
resolved in Rule 23 certification proceedings.  Nonetheless,
there is no prejudice to Plaintiff and striking this affirmative
defense is an empty formalism.  Therefore, Plaintiff's motion to
strike is DENIED.

    6.  <u>Seventh Affirmative Defense</u>.

The Seventh Affirmative Defense alleges: "To the extent that
plaintiff seeks to pursue any claims beyond the applicable
statute of limitations period, those claims may be barred by a
statute of limitations defense."

Plaintiff seeks to strike this affirmative defense as
"frivolous."  The statute of limitations for civil RICO is four
years.  *Agency Holding Corp. v. Malley-Duff & Assoc.*, 483 U.S.
143, 156 (1987).  Plaintiff asserts the FAC alleges that
Defendants violated civil RICO continuously, starting in 2002.
This action was commenced on October 5, 2006.

18

However, as Defendants note, the FAC does not specifically allege that the Illegal Hiring Scheme commenced in 2002. Paragraph 25 of the FAC alleges: "The Scheme is ongoing, open-ended, and has been perpetuated continuously for the last four years."

In opposition, Defendants cite *Pincay v. Andrews*, 238 F.3d 1106 (9th Cir.), *cert. denied,* 534 U.S. 885 (2001):

> We have continuously followed the 'injury discovery' statute of limitations rule for civil RICO claims ... Under this rule, 'the civil RICO limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action.' ... Thus, the 'injury discovery' rule creates a disjunctive two-prong test of actual or constructive notice, under which the statute begins running under either prong.

*Id.*, at 1109.[3]  In addition, "a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir.1996).

In *Marin v. Evans*, *supra*, 2006 WL 655456, the District Court ruled:

> Plaintiffs argue that Defendants' statute of limitation defense is legally insufficient as a matter of law and should be stricken ... The Ninth Circuit follows the 'injury discovery' rule which has two components. *Grimmett v. Brown,* 75 F.3d 506, 510-512 (9th Cir.1996).  First, the four year statute of

---

[3]*Pincay* notes that the "injury discovery" rule has not been overruled by the Supreme Court although the Supreme Court has explicitly reserved the question of whether the standard is correct.  *Id.*, at n.3, citing *Rotella v. Wood,* 528 U.S. 549, 554 n.2 (2000).

> limitations period begins to run when a
> plaintiff knows, or should have known of his
> or her injury.  *Id.* at 510.  Second, 'a new
> cause of action accrues for each new and
> independent injury, even if the RICO
> violation causing the injury happened more
> than four years before.'  *Id.*

> Plaintiffs' complaint alleges that
> 'defendants have depressed their wages by
> knowingly employing vast numbers of illegal
> immigrants, more than 5,000 in the last four
> years.' ... Plaintiffs' complaint was filed
> on September 29, 2006.  Given that it is
> possible that there may be questions of fact
> regarding when Plaintiffs knew about the
> injury, and whether Plaintiffs are relying on
> the 'new and independent injury' to assert
> the basis for the RICO violations that
> occurred prior to 2002, it is premature to
> strike this affirmative defense at this stage
> of the proceedings.

Defendants argue that the *Marin* rationale applies to Plaintiff's motion to strike the Seventh Affirmative Defense: "Given the apparent absence of any 'new and *independent*' injury, there may definitely be questions of fact when Plaintiff knew or should have known about his alleged injury and the relationship of that injury to any conduct falling within the limitations period."  Defendants note also that Plaintiff's discovery requests seek information for the past ten years.

Plaintiff responds that Defendants' reliance on *Marin* is misplaced because *Marin* omitted any discussion of *Trollinger v. Tyson Foods, Inc.*, 2006 WL 319022 (E.D.Tenn.2006).  Plaintiff's counsel represents that he was counsel for the Plaintiff in *Marin.*  Plaintiff's counsel represents: "The issue of the 'discovery rule' was not briefed (or raised) by either side in

1   <u>Marin v. Evans</u>.  If the issue was raised, Plaintiffs would have

2   referred the Court to <u>Trollinger v. Tyson Foods, Inc.</u>, which

3   decided this exact issue in the context of a motion for summary

4   judgment."

5       However, the Plaintiff in *Marin* did move to strike the

6   statute of limitations affirmative defense.  Although the

7   Defendant in *Marin* did not respond, it is apparent that the

8   District Court conducted its own research concerning the position

9   of the Ninth Circuit.

10      In *Trollinger v. Tyson Foods, Inc.*, the District Court

11  analyzed whether the "separate accrual" rule should be applied.

12  After noting that a number of Circuit Courts of Appeal, including

13  the Ninth Circuit in *Grimmett v. Brown*, *supra*, 75 F.3d 506, 512,

14  apply the "separate accrual" in civil RICO actions, the District

15  Court ruled:

16          The question remains whether the separate
            accrual rule applies in this action.
17          Plaintiffs' theory is that Tyson engaged in
            an illegal immigrant hiring scheme in which
18          Tyson allegedly hired illegal aliens which in
            turn depressed the wages that legal U.S.
19          citizens could earn by working at Tyson.
            They argue that each time Tyson hired an
20          illegal immigrant, such hiring constituted a
            new and independent injury causing
21          independent damages.  The Court agrees that,
            based on Plaintiffs' alleged theory and
22          viewing the facts in the light most favorable
            to Plaintiffs, each time Tyson unlawfully
23          hired an illegal immigrant, the Plaintiffs
            sustained an injury to their business.
24
25      Plaintiff, relying on this ruling, argues that "because the

26  Amended Complaint alleges injury caused by conduct (illegal

hiring) occurring within the last four years ..., the fact that illegal hiring may have begun more than four years ago does not bar [Plaintiff's] claim."

Plaintiff cited *Trollinger* in his reply brief.  Therefore, Defendants have not had the opportunity to address it.  This Court is not bound by *Trollinger*'s ruling and, as noted, the ruling was made at summary judgment, not in the context of a motion to strike an affirmative defense.  The underlying facts are not developed.  Striking the Seventh Affirmative Defense may be premature.  The validity of the defense should be determined by dispositive motion.[4]  The motion to strike the Seventh Affirmative Defense is DENIED.

### CONCLUSION

For the reasons stated above, Plaintiff's motion to strike affirmative defenses is DENIED.

IT IS SO ORDERED.

Dated:   __June 1, 2007__                    _____/s/ Oliver W. Wanger_____
                                            UNITED STATES DISTRICT JUDGE

---

[4]Defendants' Answer also "reserve[s] the right to add any additional defenses, cross-claims, and/or to amend this Answer to the First Amended Complaint."  Plaintiff contends that Defendants have waived any affirmative defenses not raised in the Answer, citing *Roberts v. College of the Desert*, 870 F.2d 1411, 1414 (9th Cir.1988).  *Roberts* held that "the statute of limitations is an affirmative defense which was not specially pleaded in the district court and cannot be raised for the first time on appeal."  *Roberts* does not preclude Defendants from amending their Answer to allege additional affirmative defenses.  Plaintiff further contends that Defendant must seek leave of court to amend the Answer pursuant to Rule 15(a), Federal Rules of Civil Procedure.  This issue is not relevant to resolution of the motion to strike and is not addressed further.